UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CHARLES HUNTER HOBSON, ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | No. 3:23-CV-374-TAV-DCP |
| ) | |
| BLACK MOUNTAIN MARKETING AND ) | |
| SALES LP, ) | |
| ) | |
| Defendant/Counter-Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| BLACK MOUNTAIN MARKETING AND ) | |
| SALES GP LLC, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Charles Hunter Hobson's ("Plaintiff") Motion to Transfer Venue Under 28 U.S.C. § 1404 [Doc. 27]. Black Mountain Marketing and Sales LP ("Defendant LP") and Black Mountain Marketing and Sales GP LLC ("Defendant GP LLC") (together "Defendants") responded in opposition [Doc. 28], and Plaintiff replied [Doc. 29]. The motion is now ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons set forth below, the Court **DENIES** Plaintiff's motion [**Doc. 27**].

I.     BACKGROUND

Plaintiff's claim arises out of a breach of contract dispute between him and Defendants. "Prior to April 2023, Plaintiff was the President and CEO of INMET, a Delaware limited liability company that operated underground coal mines in Kentucky and Virginia[,]" and Defendants provided marketing and sold coal processed at INMET's mines [Doc. 13 ¶¶ 12–13].

On September 18, 2019, Plaintiff, along with two other individuals, entered into a Guaranty with Defendant LP, in which Defendant LP agreed to prepay for coal and advance additional funds to INMET [Doc. 17 p. 6; *See also* Doc. 28 p. 2]. The Guaranty is governed by New York law, "without reference to any choice of law doctrine" [Doc. 28 p. 2; Doc. 17-1 p. 7], but also contains the following language:

> Submission to Jurisdiction. To induce the Beneficiary [Defendant LP] to accept this Guaranty, Guarantors [Plaintiff, Corbin Robertson III, and Keith Dyke] hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York and of any New York state court sitting in New York City over any action, litigation or proceeding of any kind whatsoever, whether in law or equity, or whether in contract or tort or otherwise, arising out of or relating to this Guaranty or the transactions contemplated hereby, and Guarantors [Plaintiff, Corbin Robertson III, and Keith Dyke] hereby irrevocably agree that all claims in respect of such action, litigation or proceeding may be heard and determined in such courts. . . . Each party hereby agrees that a final judgment in any such action, litigation or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

[Doc. 17-1 p. 7].

On February 20, 2023, one or both Defendants sent Plaintiff a letter ("Letter Agreement") that stated:

> [I]n the event BMMS acquires INMET's assets and operations in accordance with an asset purchase agreement between BMMS and INMET, BMMS will continue to employ you, if, and after, BMMS acquires the INMET assets and operations, at $500,000 of salary, for a period of at least two years after closing of the acquisition. In addition, BMMS intends to

2

purchase as part of its acquisition any and all claims that INMET and its bankruptcy estate may have against you.

[Doc. 13-1 p. 1].[1] The letter is signed by Peter Pritchard[2] and Plaintiff [*Id.* at 2].

Subsequently, on April 5, 2023, INMET filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Eastern District of Kentucky ("Bankruptcy Court") [Doc. 13 ¶ 15].

On July 11, 2023, Defendant LP purchased certain assets from INMET, including "all of its then-operating mining assets located in Kentucky and Virginia, . . . [and Defendant LP] and Bluegrass agreed to acquire [] 'all avoidance actions, claims and causes of action of [INMET] and [INMET's] bankruptcy estate . . . against [Plaintiff]'" [Doc. 28 p. 2 (quoting Doc. 17-2 (Asset Purchase Agreement))]. The Asset Purchase Agreement contains the following section labeled, "Governing Law; Consent to Jurisdiction and Venue; Jury Trial Waiver":

> (b) Without limitation of any Party's right to appeal any Order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and (ii) any and all claims relating to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent and submit to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Action or Proceeding; provided, however, that, if the Bankruptcy Case has been closed pursuant to Section 350(a) of the Bankruptcy Code, all Actions and Proceedings arising out of or relating to this Agreement shall be heard and determined the Delaware Court of Chancery and any state appellate court therefrom within the State of Delaware (or in the event (but only in the event) that such court does not have subject matter jurisdiction over such Proceeding in the United States District Court for the District of Delaware), and the Parties hereby irrevocably submit to the exclusive jurisdiction and venue of such courts in

---

[1] The header of the letter reads "BLACK MOUNTAIN MARKETING AND SALES LP" while the subject line and letter itself references "Black Mountain Marketing and Sales, LLC" [Doc. 13-1 p. 1].

[2] Peter Pritchard is not identified by the parties.

3

any such Action or Proceeding and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Action or Proceeding.

[Doc. 17-2 pp. 79–80].

On July 13, 2023, the Bankruptcy Court approved the sale of a disputed number of INMET's assets to Bluegrass Energy LLC ("Bluegrass"), which Plaintiff asserts is a subsidiary of Defendants [Doc. 13 ¶16]. The sale closed on July 28, 2023, which, Plaintiff contends, "triggered Defendants' obligation under the parties' Letter Agreement to employ Plaintiff for a period of at least two years at a salary of $500,000.00 annually" [*Id.* ¶ 17]. "After consummating its purchase of INMET's assets, Bluegrass assigned the claims INMET held against [Plaintiff] to BMMS effective as of October 12, 2023" [Doc. 28 p. 3].

Plaintiff filed a Complaint against Defendants on September 6, 2023, in the Chancery Court for Knox County, Tennessee, for breach of contract [Doc. 1-1 pp. 4–9 (State Court Complaint)]. Defendant LP removed the case to federal court on October 17, 2023 [Doc. 1]. Plaintiff filed an Amended Complaint [Doc. 13] on November 13, 2023, and then, Defendants filed their Joint Answer and Counterclaims ("Answer") [Doc. 17] on December 18, 2023.

In their Answer, Defendants assert six counterclaims for breach of fiduciary duty, actual fraudulent transfer, constructive fraudulent transfer, unjust enrichment, conversion, and breach of guaranty [*Id.* at 10–16]. Defendants allege that Plaintiff "used his position as INMET's principal, sole manager, and Chief Executive Officer to steal money from INMET for his own personal use and the use of his family and friends" [*Id.* at 4]. They further allege that Plaintiff actively concealed his theft from Defendants, "which had advanced INMET tens of millions of dollars to fund INMET's operations" [*Id.*].[3] Defendants assert that they discovered Plaintiff "stole or misused

---

[3] Defendants assert they discovered around January 2023 that Plaintiff "had stolen funds from INMET to pay the attorneys' fees and expenses he had incurred, or would incur, in connection with a criminal indictment of [Plaintiff], personally, that was wholly unrelated to INMET and

4

additional INMET funds totaling, at minimum, hundreds of thousands of dollars for his own personal benefit or for the benefit of his friends and family" after acquiring certain INMET assets, books, and records on July 28, 2023 [*Id.*]. Plaintiff denies all of these allegations [Doc. 24 ¶¶ 1–5].

Plaintiff now moves to transfer venue for Defendants' counterclaims [Doc. 27]. Specifically, Plaintiff seeks to maintain his breach of contract claim in this Court and to transfer Defendants' breach of guaranty claim to the Southern District of New York and the remaining counterclaims to the Bankruptcy Court [*Id.* at 1]. He argues that these transfers are consistent with choice of forum clauses in the relevant agreements [*id.* at 5–6] and is otherwise supported by the doctrine of *forum non conveniens* [*id.* at 6–7].

Defendants oppose Plaintiff's motion and argue that the forum selection clause in the Guaranty is permissive, not mandatory, and therefore transfer is not appropriate [Doc. 28 pp. 4–6]. Further, Defendants assert that the forum selection clause in the Asset Purchase Agreement is not enforceable for the purpose of this litigation because Plaintiff is not a party to that agreement [*Id.* at 6–9]. Finally, Defendants argue that severing and transferring these claims is not appropriate because "28 U.S.C. § 1404 'only authorizes the transfer of an entire action, not individual claims'" [*id.* at 11 (quoting *Race Winning Brands, Inc. v. Crawford*, 601 F. Supp. 3d 279, 288 (N.D. Ohio 2022)], and because of the close relationship between Plaintiff's claims and Defendants' counterclaims [*id.* at 11–13].

---

INMET's operations" and that Plaintiff "continued to misuse INMET's funds and manage and operate INMET in a manner designed specifically to benefit [Plaintiff] at INMET's and BMMS's expense" [Doc. 17 p. 4]. The Court notes that the following month, in February 2023, Defendants entered into the Letter Agreement with Plaintiff [Doc. 13-1 p. 1].

5

Plaintiff replied, arguing that the forum selection clause in the Guaranty is mandatory [Doc. 29 pp. 1–2] and that the forum selection clause in the Asset Purchase Agreement applies to Defendants' counterclaims because the Defendants acquired the claims against Plaintiff from that agreement [*Id.* at 2–3]. Finally, Plaintiff asserts that severing and transferring the case is appropriate because a connection to Tennessee is not sufficient to overcome the applicable forum selection clauses [*Id.* at 3–4].

The Court has considered the parties' arguments and finds that Plaintiff's request is not well taken because the Court cannot transfer individual claims and Plaintiff has not shown that severing the claims is appropriate.

## II.     ANALYSIS

As an initial matter, the Court notes that a majority of the briefing relates to the forum selection clauses. But here, Plaintiff asks the Court to transfer certain claims to other jurisdictions under 28 U.S.C. § 1404, which states "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404. The language of the statute "only authorizes the transfer of an entire action, not individual claims." *Eastman Chem. Co. v. URS Corp.*, No. 2:10-CV-218, 2012 WL 13006066, at *2 (E.D. Tenn. Mar. 28, 2012) (citing *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir. 1991)); *see also Race Winning Brands, Inc.*, 601 F. Supp. 3d at 288 ("By its terms, Section 1404 only authorizes the transfer of an entire action, not individual claims."); *In re Brand–Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1377 (J.P.M.L. 2003) ("After all, the plain language of section 1404(a) authorizes only the transfer of an entire action, not the transfer of individual claims within an action." (citation omitted)); *Coast to Coast Health*

6

*Care Servs., Inc. v. Meyerhoffer*, No. 2:10-CV-734, 2012 WL 169963, at *7 (S.D. Ohio Jan. 19, 2012) ("This Court does not have the authority or ability to parse or bifurcate this action, transferring some, but not all, of the case to Utah."); *Putnam v. Shelby Cnty., Ky.*, No. 3:17-CV-00104, 2018 WL 2452180, at *3 (E.D. Ky. May 31, 2018) (same). Accordingly, the Court cannot grant the relief that Plaintiff seeks in his motion.

While Plaintiff's reply does not address the language of 28 U.S.C. § 1404, *see Wood v. U.S. Bank Nat'l Ass'n*, No. 5:17-cv-2234, 2019 WL 1255229, at *3 (N.D. Ohio Mar. 19, 2019) (finding that "[a] party waives opposition to an argument by failing to address it in her responsive brief"), he states that the Court should sever the counterclaims [Doc. 29 pp. 3–5]. The Court will therefore turn to whether the counterclaims should be severed.

Defendants argue that the claims in this case cannot be severed under Rule 21 as they all arise under Plaintiff's misappropriation while working at INMET [Doc. 28 pp. 11–12]. Plaintiff responds, claiming that severing his claim from Defendants' counterclaims is appropriate because while each claim is tied to Tennessee, these ties are insufficient to overcome the applicable forum selection clauses in the agreements [Doc. 29 pp. 3–4].

Rule 21 of the Federal Rules of Civil Procedure provides that "[t]he court may . . . sever any claim against a party." Courts consider a number of factors when determining whether to sever claims, including:

> (1) whether the claims arise out of the same transaction or occurrence;
> 
> (2) whether the claims present some common questions of law or fact;
> 
> (3) whether settlement of the claims or judicial economy would be facilitated;
> 
> (4) whether prejudice would be avoided if severance were granted; and

7

>   (5) whether different witnesses and documentary proof are required for separate claims.

*Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901, 940 (M.D. Tenn. 2013) (citation omitted). "Under Sixth Circuit precedent, the words 'transaction or occurrence' are to be given broad and liberal interpretation in order to avoid a multiplicity of suits. . . . To determine whether claims arise out of the same transaction or occurrence, the Sixth Circuit evaluates whether there is a logical relationship between the claims." *Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, No. 1:16CV1946, 2016 WL 6995271, at *2 (N.D. Ohio Nov. 30, 2016) (cleaned up). "'The logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant.'" *GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 813 (E.D. Mich. 2018) (quoting *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012)). "The moving party is tasked with establishing that severance is required to avoid prejudice or confusion and to promote the ends of justice." *Mark Francis Macduff Spence, Sr. v. Dexcom, Inc.*, No. 3:18-CV-0369, 2019 WL 302504, at *2 (M.D. Tenn. Jan. 23, 2019) (citing *Reynolds v. Merck Sharp & Dohme Corp.*, Case No. 3:15 cv 397, 2016 WL 3090951, at *2 (N.D. Ohio June 2, 2016)).

The Court notes that Plaintiff does not address many of the factors above. Instead, he states that "there are five public interest factors that courts consider, including docket congestion, burden on the jury pool, connection between the forum and the governing law, and the need to address conflicts of law issue" in deciding whether an action should be dismissed or transferred for *forum non conveniens* grounds [Doc. 29 p. 4; *see also* Doc. 27 p. 3 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S 235, 254 n.22, 257 (1981)]. Turning to the applicable factors when considering whether to sever claims, the Court finds that Plaintiff has not met his burden to show that the claims and counterclaims should be severed. Plaintiff's initial cause of action as well as Defendants' affirmative defenses and counterclaims are centered on the various agreements between the parties.

Defendants purchased the rights to bring the counterclaims via the Asset Purchase Agreement. Plaintiff's claim pertains to the Letter Agreement that he asserts was triggered by the Asset Purchase Agreement. Defendants' affirmative defenses to that claim relate to Plaintiff's "fraudulent and intentional misconduct" that is further outlined in their counterclaims [Doc. 17 p. 3]. In addition, Defendants' claims pertain to Plaintiff's actions while he worked at INMET which, Defendants assert, "lead to INMET's default under its agreements with [Defendants]" and to Plaintiff's claim and Defendants' counterclaims [Doc. 28 p. 12]. Defendants also allege that Plaintiff breached the Guaranty agreement, because INMET never paid roughly $1 million to Defendants, which Plaintiff personally guaranteed [Doc. 17 pp. 6–7]. Ultimately, all of the pending claims relate to the overlapping transactions and sets of facts, which will likely involve the same witnesses and documents. *See Mark Francis Macduff Spence, Sr.*, 2019 WL 302504, at *2 ("Courts have also considered whether settlement of the claims or judicial economy would be facilitated; whether prejudice would be avoided if severance were granted[.]"). Finally, Plaintiff has not established any prejudice in litigating all the claims together. *See id.*

Therefore, all five factors to be considered under Rule 21 do not weigh in favor of severing Plaintiff's claim and Defendants' counterclaims, and therefore, Plaintiff's motion to transfer must be denied.[4]

---

[4] Plaintiff's motion seeks to transfer certain causes of action to other jurisdictions, and the reply brief suggests severing the case [*See generally* Docs. 27 & 29]. However, neither Plaintiff's motion, nor his reply brief, addresses how the forum selection clauses fit into the factors the Court should consider under Federal Rule of Civil Procedure 21, and he does not ask the Court to transfer the entire action to another jurisdiction if the Court found the claims could not be severed.

9

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion to Transfer Venue Under 28 U.S.C. § 1404 [**Doc. 27**].

**IT IS SO ORDERED.**

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge